UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBA RODRIGUEZ,

        Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

        Defendant.

_____/

Case No. 15-12768

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [25], AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD [27]**

Plaintiff Dr. Alba Rodriguez filed this action against Defendant Life Insurance
Company of North America ("LINA") seeking long-term disability ("LTD") income benefits
under Section 502(a)(1)(b) of the Employee Retirement Income Security Act ("ERISA").
Currently before the Court is Plaintiff's motion for summary judgment and Defendant's
cross motion for judgment on the administrative record. For the reasons set forth below,
the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion, and GRANTS IN
PART and DENIES IN PART Defendant's motion.

## I. FINDINGS OF FACT

In 1986, Plaintiff was involved in a motor vehicle accident, and she sustained
fractures to her spine, left hip, left acetabulum, and pelvis. She underwent pelvic
reconstruction surgery with hardware implants. In 1987, Plaintiff underwent a total left hip
arthroplasty. She was diagnosed with a cervical herniation in 2004. Years later, on January

28, 2012, Plaintiff slipped and fell, allegedly in the course of her work. Worker's compensation benefits were denied, and the claim remains pending. As a result of this slip and fall, Plaintiff re-injured her left hip and back. Plaintiff was 45 years old on her alleged disability onset date of May 24, 2012.

Plaintiff is an eligible participant in the Long Term Disability Plan for employees of the Henry Ford Health Service, for which Defendant LINA is the insurer. Under the LTD Plan, the claimant must provide LINA with "satisfactory proof of Disability before benefits will be paid," and LINA requires "continued proof of the Employee's Disability for benefits to continue." (Dkt. # 10-3, Pg ID 540). In relevant part, a claimant must provide LINA satisfactory proof that she was continuously disabled throughout the entire "Elimination Period," which for Plaintiff was 180 days. *See id.* at Pg ID 527, 540.

The LTD Plan defines "Disability/Disabled" during the first 24 months (the "own occupation" period) as follows.

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; and
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

*Id.* at Pg ID 526.

The LTD Plan defines "Disability/Disabled" after 24 months (the "any occupation" period) as follows.

> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her Indexed Earnings.

*Id.*

Under the LTD Plan, LINA may reduce the amount of LTD benefits payable by the amount of "Other Income Benefits," which include any amounts received or assumed to be received by the employee under social security and/or worker's compensation. *Id.* at Pg ID 540-41.

At the alleged disability onset date, Plaintiff had been employed by Henry Ford Health Service as Associate Director of the Center for Integrative Wellness. Her job was considered a Program Manager skilled job. According to the Program Manager job description, Plaintiff's duties included leading group wellness programs with 100+ attendees, traveling to corporate offices and conference centers, developing and implementing all operational aspects of the group wellness programs, overseeing activities and training of support personnel and group program leaders, serving on internal and external committees, and writing publications. (Dkt. # 10-2 at Pg ID 406-07). The job required a doctorate degree. *Id.* at Pg ID 407. According to the Dictionary of Occupational Titles ("DOT"), the job of Program Manager has a Specific Vocational Preparation of four to ten years (level 8 out of a possible 9 levels). It requires the ability to apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions; interpret an extensive variety of technical instructions in mathematical or diagrammatic form; and deal with several abstract and concrete variables (Reasoning Development level 5). The Program Manager job also requires Mathematical Development at a level 5 and Language Development at a level 5 (out of a possible 6 levels).

On June 16, 2012, approximately five months after her slip and fall accident, Plaintiff underwent an invasive and long revision surgery of the total left hip arthroplasty. *Id.* at Pg

ID 449-51. Dr. Robb Weir, Plaintiff's orthopedic surgeon, initially estimated that Plaintiff would be able to return to work without restrictions on September 10, 2012. *Id.* at Pg ID 463. Plaintiff had a follow up visit with Dr. Weir on October 24, 2012. *Id.* at Pg ID 434. Dr. Weir noted that Plaintiff was continuing to improve, was participating in physical therapy and water therapy, and denied any pain with weightbearing in the leg. Dr. Weir further noted that Plaintiff was somewhat limited due to her back, and he referred her to Dr. Shlomo Mandel to address her back pain. Dr. Weir recommended another 4-6 weeks off work. He delayed her work release date to December 10, 2012. *Id.* at Pg ID 427.

Plaintiff collected short-term disability ("STD") benefits from June 25, 2012 through December 9, 2012, at which point continued STD benefits were denied. (Dkt. # 10-1 at Pg ID 272, 305). Plaintiff's STD claim is not at issue in this case.

LINA first denied Plaintiff's claim for LTD benefits on November 30, 2012, explaining that Plaintiff had failed to provide satisfactory proof that she was "Disabled" throughout the entire Elimination Period: "Your first day of disability was June 18, 2012. You would not have satisfied the elimination period until December 24, 2012. According to the information on file, you were released to work on December 10, 2012." *Id.* at Pg ID 258.

Subsequently, LINA received additional medical records from Dr. Mandel and Dr. Weir. These, along with all other records in the file, were reviewed by a Claim Manager and a Nurse Claim Manager. *Id.* at Pg ID 233. On December 7, 2012, Dr. Mandel saw Plaintiff and noted that an MRI conducted on November 23, 2012 showed disk bulging at the L5-S1 level. (Dkt. # 10-2, Pg ID 401). Dr. Mandel noted that Plaintiff has limited flexion and extension and pain with straight leg rising. Dr. Mandel further noted that Plaintiff complained of numbness and paresthesias. On December 12, 2012, Dr. Weir again

delayed Plaintiff's work release date until January 2, 2013. *Id.* at Pg ID 394. On December 18, 2012, the Nurse Case Manager reached out to Dr. Weir to clarify Plaintiff's restrictions, and Dr. Weir indicated that Plaintiff could return to work on January 2, 2013. Dr. Weir did not place any activity restrictions at that time. (Dkt. # 10 at Pg ID 86). On December 19, 2012, Dr. Mandel completed a Physical Abilities Assessment form, and noted that Plaintiff's restrictions were limited sitting and no repetitive lifting, stooping, bending, or twisting. (Dkt. # 10-2 at Pg ID 389-90). On December 21, 2012, the Nurse Claim Manger spoke with Dr. Mandel's office to clarify Plaintiff's restrictions. According to the nurse's notes, Dr. Mandel's staff indicated that Plaintiff was capable of sitting frequently with position changes and capable of sedentary work. (Dkt. # 10 at Pg ID 86).

On December 28, 2012, LINA again denied Plaintiff's claim for LTD benefits. (Dkt. # 10-1 at Pg ID 232-34). The denial letter notes that Plaintiff's treating providers do not give any measurable exam findings to support a functional impairment that would preclude her from performing her own occupation as a Program Manager, a sedentary occupation under the DOT.

Plaintiff filed her first administrative appeal on June 27, 2013. (Dkt. # 10-2 at Pg ID 374). Plaintiff submitted additional medical documentation, including a Work/School Letter from Dr. Mandel, a letter from Dr. Ramon Nunez, an office visit note from Dr. Steven Fried, and a Medical Questionnaire from Dr. Fried.

In a Work/School Letter, dated April 26, 2013, Dr. Mandel wrote that he examined Plaintiff on April 8, 2013. He recommended that Plaintiff may return to work with the following restrictions: no repetitive squatting, bending, or lifting; no lifting in excess of ten pounds; and limited sitting with frequent position change as needed. *Id.* at Pg ID 385.

5

In a letter dated June 26, 2013, Dr. Ramon Nunez of the Waterford Center for Integrative Medicine noted that his examination of Plaintiff revealed left hip pain with movement; left pelvis pain on palpitation; muscle contractions of left hip flexors, quadriceps femoris, and vastus medialis; spasms of the left quadratus lumborum, left lower multifidus, right trapezius, right rhomboids, and right upper latissimus; overall increased muscle tone of right and left intercostals; and left wrist pain with movement. *Id.* at Pg ID 384. His letter does not specify dates of examination and does not note specific restrictions. It states that Plaintiff continues with her pain management treatments, which include acupuncture, neuromuscular reeducation, myofascial release, and therapeutic exercise.

Plaintiff saw Dr. Steven Fried, her primary care provider of many years, on June 25, 2013. The objective portion of the visit note indicates that Plaintiff had good strength in her four extremities but decreased range of motion in her left hip. *Id.* at Pg ID 381. The note further states that Plaintiff has chronic left hip pain; herniated lumbar intervertebral disc; herniated nucleus pulposus, cervical; arthritis; compression fracture; and memory impairment. *Id.* Dr. Fried noted that Plaintiff is taking Valium, Norco, Skelaxin, and Oxycodone. Dr. Fried acknowledged that he has tried to help Plaintiff as her primary care provider, but that he and Plaintiff agree that Plaintiff should see a physical medicine and rehabilitation specialist. *Id.* at Pg ID 380, 382. Dr. Fried opined that Plaintiff's restrictions would likely prevent her from working in her usual occupation at that time. *Id.*

The Medical Questionnaire from Dr. Fried, dated June 26, 2013, indicates that Plaintiff has acute and chronic back pain as well as left hip pain after replacement, and that physical therapy has helped. *Id.* at Pg ID 376. Dr. Fried noted that Plaintiff has significant

trouble walking due to pain, and that she has a reasonable need to lie down during the day for 1-2 hours due to pain. *Id.* at Pg ID 378. He opined that Plaintiff can travel alone, and that she can occasionally carry a weight of 5 to 10 pounds. *Id.* He further opined that the pain moderately interferes with Plaintiff's concentration, attention, and performance. *Id.* at Pg ID 379. Dr. Fried anticipated that Plaintiff's physical impairments and treatment would cause her to be absent from work four times a month or more. *Id.*

Following Plaintiff's filing of her first administrative appeal, LINA had an Appeals Specialist and a Medical Director (Dr. Nick Ghaphery, board certified in family practice) review Plaintiff's claim file in its entirety. (Dkt. # 10 at Pg ID 62). Dr. Ghaphery concluded that the medical records did not support restrictions that would amount to an inability to perform Plaintiff's sedentary occupation of Program Manager.

On October 29, 2013, LINA affirmed its denial of Plaintiff's LTD claim. (Dkt. # 10-1 at Pg ID 219-21). The denial letter notes that Dr. Weir released Plaintiff to return to work without restrictions on January 2, 2013. It further notes that the restrictions in Dr. Mandel's Work/School Letter and Dr. Fried's Medical Questionnaire are not supported by the medical information on file. The letter explains that Dr. Fried's office visit note revealed that Plaintiff had good strength in all four extremities and was in no distress, and that Dr. Nunez did not provide additional physical examinations that would limit Plaintiff's ability to function at the sedentary demand level with ability to change positions.

Following this denial, Plaintiff submitted additional office visit notes and a Physical Medical Questionnaire from Dr. Nuala Crotty. The first office visit note, dated September 6, 2013, indicates that Plaintiff has chronic low back pain and left thigh pain. (Dkt. # 10-2 at Pg ID 355). Dr. Crotty noted that Plaintiff's overall condition is improving but fluctuates.

7

*Id.* at Pg ID 356. The objective portion of the note indicates that Plaintiff has antalgic gait, atrophy of the left calf and buttock, guarded range of motion of the lumbar spine, severe tightness in the hamstrings, and decreased muscle strength in the hip. *Id.* at Pg ID 358. Dr. Crotty recommended regular stretching and prescribed diazepam, hydrocodone-acetaminophen, and oxycodone. *Id.* at Pg ID 352-53. She noted that Plaintiff feels excessively sleepy during the day. *Id.* at Pg ID 356. The second office visit note, dated September 13, 2013, indicates that Plaintiff has headaches and myofascial, lower back, neck, shoulder, and leg pain that have worsened since her slip and fall accident. *Id.* at Pg ID 350. The objective portion of the note indicates that Plaintiff's right shoulder is noticeably elevated compared to the left, that she has antalgic gait, and that her right trapezius, right levator scapulae, right pectoralis, and right latissimus dorsi were noticeably tight. *Id.* at Pg ID 351. Dr. Crotty reviewed a cervical spine MRI from 2004, which showed disk herniations and increased T2 signal in the disks suggesting annular tears. *Id.*

The Medical Questionnaire, dated September 17, 2013, indicates that Dr. Crotty specializes in "Physiatry / Medical Spine." *Id.* at Pg ID 346. Dr. Crotty noted that Plaintiff's prognosis is "Fair / good." She opined that Plaintiff does not have a reasonable need to lie down during the day, but that she can continuously stand for only two minutes and sit upright for only ten to fifteen minutes at a time. *Id.* at Pg ID 348. Dr. Crotty noted that Plaintiff has moderate limitations in her ability to bend, balance, and twist and turn her lower body, and that she has marked limitations in her ability to pull, push, twist and turn her upper body, squat, kneel, and climb. *Id.* Dr. Crotty opined that Plaintiff's pain moderately interferes with her concentration, attention, and performance. *Id.* at Pg ID 349.

On November 8, 2013, LINA informed Plaintiff via letter that the new documentation from Dr. Crotty was reviewed and did not change LINA's prior decision because Dr. Crotty provided no further limitations that would interfere with Plaintiff's ability to perform sedentary work. (Dkt. # 10-1 at Pg ID 209).

On April 28, 2014, Plaintiff re-submitted the documentation from Dr. Crotty and requested that LINA reconsider its October 29, 2013 decision affirming its denial of Plaintiff's LTD claim. On May 9, 2014, LINA responded that a second request for appeal must include new medical information relevant to the time period at issue. *Id.* at Pg ID 208.

On March 26, 2015, Plaintiff submitted a second appeal with additional documentation, including medical records from Dr. Simon Faynzilberg and a fully favorable decision from the Social Security Administration ("SSA"). (Dkt. # 10-2 at Pg ID 325).

Plaintiff first saw Dr. Faynzilberg, board certified in anesthesiology and pain medicine, at the Anna Jaques Hospital Comprehensive Pain Center on July 10, 2014. *Id.* at Pg ID 342. His notes indicate that Plaintiff tried several medications but they made her sleepy, and she could not tolerate them. Dr. Faynzilberg reviewed an MRI, dated November 23, 2012, which revealed mild degenerative changes: "Facet arthropathy at L4-L5 and L5-S1. Bilateral pars articularis defect with minimal anterolisthesis at L5-S1." *Id.* Dr. Faynzilberg also performed a physical examination, which revealed ambulation with a limp, decreased range of motion in the lumbar spine, and a positive facet loading test. Dr. Faynzilberg described his impressions as follows.

> Ms. Rodriguez presented with a very complex chronic pain syndrome status post initial injury in '86, and a second injury in 2012. Status post left total hip revision. As far as her lumbosacral area pain, most likely it is related to degenerative disk disease and facet arthropathy. Significant myofascial component as well. Left lower extremity pain is definitely related to very

invasive surgery / left total hip revision.

*Id.* at Pg ID 343. Dr. Faynzilberg noted that he believes that the myofascial pain is "very significant in this case." He recommended two different muscle relaxants as well as "medial branch blocks / facet joint injection and radiofrequency ablation." *Id.*

Plaintiff had a follow-up visit with Dr. Faynzilberg on August 20, 2014. *Id.* at Pg ID 340. Dr. Faynzilberg noted that the muscle relaxants he prescribed the last time did not provide significant pain relief. The physical examination results and impressions were the same as during the last visit. Dr. Faynzilberg and Plaintiff again discussed medial branch blocks and radiofrequency ablation to address her facet joint arthropathy, and Plaintiff again requested more time to consider it.

Plaintiff next saw Dr. Faynzilberg on December 5, 2014. *Id.* at Pg ID 338. The physical examination results and impressions were the same as during the last visit. Dr. Faynzilberg and Plaintiff again discussed medial branch blocks and radiofrequency ablation: "The patient is still, I believe, not very comfortable with this idea. I spent a long time to discuss it and explained potential side effects and benefits." *Id.* Lastly, Dr. Faynzilberg noted that Plaintiff asked him to complete a form, which was "essentially a functional capacity test." He explained that the form should be completed in a special setting with a physical therapist who specializes in conducting functional capacity tests.

On January 6, 2015, the SSA issued a fully favorable decision in Plaintiff's case. Administrative Law Judge B. Lloyd Blair (the "ALJ") found Plaintiff has a "residual functional capacity to perform sedentary work . . . except that she requires the ability to change positions every 15 minutes; . . . and due to pain and other symptoms of her impairments,

she would be off task for 20% of the work shift." *Id.* at Pg ID 332. The ALJ noted that Plaintiff testified that she "spends most typical days sitting in a recliner and getting up as needed. She estimated that she can lift about five to ten pounds and stand for a couple of minutes. She can sit in a recliner for about 15 minutes." Plaintiff estimated that she has a bad day during which she cannot walk at all about one to three times per week. Plaintiff testified that she lies down for about one or two hours due to fatigue and pain, and that her pain medications knock her out.

The ALJ found Plaintiff to be credible in particular because of her work history and earnings records prior to the time she became disabled:

> The claimant has a doctoral degree and in each of the 10 years before her alleged onset on [sic] disability she earned at least $50,000 per year working in various medical-academic professions that were generally sedentary or light in exertional demands . . . . With such earning capacity, the claimant would be highly motivated to return to work and it is highly unlikely that she would remain unemployed if she were not genuinely unable to work as a result of her impairments.

*Id.* at Pg ID 333.

The ALJ further found that, as a result of Plaintiff's "persistent pain that has not responded well despite revision surgery, rehabilitative therapy, acupuncture, myofascial release therapy, and medications," Plaintiff would be off task for 20% of the work shift. The ALJ then went on to find that Plaintiff was unable to perform any past relevant work, and that Plaintiff is disabled because her additional limitations so narrow the range of sedentary work that she might otherwise perform.

On Plaintiff's second appeal, LINA sent her entire claim file to Dr. Sloane R. Blair, board certified in orthopedic surgery, for an Independent Peer Review. *Id.* at Pg ID 316. In his report, dated May 15, 2015, Dr. Blair summarized Plaintiff's records and attempted

to contact Dr. Nunez, Dr. Mendel, and Dr. Weir. Dr. Nunez phone number was disconnected, and Dr. Blair could not locate an alternate number. *Id.* at Pg ID 319. Dr. Blair spoke with an office assistant for both Dr. Mendel and Dr. Weir. She stated that Plaintiff had not seen Dr. Mendel since April 2013, and that he had released her to work with the following restrictions, which were effective until July 8, 2013: no repetitive squatting, bending, or lifting; no lifting in excess of 10 pounds; limited sitting with frequent position changes as needed. *Id.* The office assistant further stated that Plaintiff had not seen Dr. Weir since April 2013. After three months following Plaintiff's surgery, Dr. Weir did not prescribe any restrictions but recommended additional weeks off work. *Id.* at Pg ID 320. There is no indication in the report that Dr. Blair ever attempted to contact Plaintiff, Dr. Fried, Dr. Crotty, or Dr. Faynzilberg, the doctors that Plaintiff had more recently been treating with.

Dr. Blair determined that for the period of June 18, 2012 to May 15, 2015, Plaintiff was functionally limited, noting that the pathology of her lumbar spine and left hip require frequent position changes while sitting. *Id.* Dr. Blair goes on to find that Plaintiff requires medically necessary work activity restrictions described as follows.

> Work restrictions would include limitations to sitting to allow for position changes every 15 to 30 minutes. Limitations to standing or walking, occasionally, up to 1/3 of the day with use of an assistive devise as necessary. Lifting and carrying of up to 10 pounds, occasionally up to 1/3 of the day. Reaching and overhead lifting of no more than 10 pounds, occasionally, to up to 1/3 of the day. No climbing stairs, stools and ladders. No bending or twisting at the waist, stooping, kneeling, crouching, or crawling. No restrictions to fine manipulation and simple grasping (frequently/constantly, up to 2/3 of the day).

*Id.* at Pg ID 321.

Dr. Blair noted in his report that the SSA determined that Plaintiff has been disabled

since May 2012, but he did not discuss the SSA decision any further. *Id.* at Pg ID 319.

Following her second appeal, Plaintiff's claim file was also reviewed by a Vocational Specialist and an Appeals Specialist. (Dkt. # 10-1, Pg ID 199). The Vocational Specialist was asked to review Dr. Blair's report and comment as to whether or not the restrictions and limitations were consistent with the physical demands of Plaintiff's own occupation. *Id.* at Pg ID 40. She concluded that the restrictions noted in Dr. Blair's report "are consistent with the required physical demands of her occupation as Program Manager, 189.167-030, Sedentary, at this time." *Id.*

On June 4, 2015, LINA upheld its decision denying Plaintiff's claim for LTD benefits. *Id.* at Pg ID 198. The letter concludes that Plaintiff's restrictions and limitations are consistent with the physical demands of Plaintiff's regular occupation, and that the available medical information does not support that Plaintiff was functionally impaired continuously throughout the Elimination Period. *Id.* at Pg ID 199. The letter also states that LINA considered the fact that SSA awarded benefits to Plaintiff, without discussing the SSA decision. *Id.*

## II.  STANDARD OF REVIEW

"[A]n administrator's decision to deny benefits is reviewed under a *de novo* standard unless the plan provides the administrator with 'discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The parties in this case agree that the appropriate standard of review is *de novo.*

> When applying a *de novo* standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision. The administrator's decision is accorded no deference or presumption of correctness. The review is limited to the record before the administrator and the court must determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan.

*Hoover*, 290 F.3d at 808-09 (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990)) (quotations and citations omitted).

## III. ANALYSIS

### A. Plaintiff's Long Term Disability During the "Own Occupation" Period

Plaintiff argues that Defendant wrongfully denied her LTD claim relying on the opinions of its record reviewers without giving adequate consideration to the opinions of her treating physicians and her combined medical impairments. Plaintiff also argues that Defendant failed to make the required vocational showing that Plaintiff can return to appropriate work.

Defendant responds that it properly denied Plaintiff's claim because two physicians, a nurse case manager, and a vocational rehabilitation counselor concluded that the medical records on file did not demonstrate functional impairments that would preclude Plaintiff from performing her own sedentary occupation. Defendant argues that Plaintiff failed to submit satisfactory proof of disability as required by the Policy and Sixth Circuit precedent.

When evaluating conflicting physician opinions in the ERISA context, a treating physician's opinion is not afforded special weight. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Nonetheless, plan administrators "may not arbitrarily refuse to

credit a claimant's reliable evidence, including the opinions of a treating physician." *Id.* "[W]hen a plan administrator favors a conclusory independent medical consultant report over the findings of a claimant's treating physician, that decision may properly be considered arbitrary." *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 721 F. Supp. 2d 584, 602 (E.D. Mich. 2010) (citing *Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 509-10 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 296-97 (6th Cir. 2005)).

While a plan administrator's reliance on file reviews is not, standing alone, inherently objectionable, "the failure to conduct a physical examination — especially where the right to do so is specifically reserved in the plan — may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination. *Calvert*, 409 F.3d at 295. This is particularly true where the plan administrator does not explain why it disagrees with a favorable SSA determination. *See Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 555 (6th Cir. 2008).

The proof of disability submitted by Plaintiff in this case included multiple examinations and physician statements referencing what has been consistently described as a very invasive revision surgery of a total left hip arthroplasty in 2012, as well as objective tests, MRIs, X-rays, and consistent subjective complaints of chronic pain. The medical evidence shows the existence of the following physical impairments that form the basis of Plaintiff's chronic pain syndrome diagnosis: degenerative disk disease, spondylosis, facet arthropathy and disk bulging at at L4-L5 and L5-S1, bilateral pars articularis defect with minimal anterolisthesis at L5-S1, T12-L1 compression fracture with

loss of vertebral height at L1, decreased muscle strength and decreased range of motion in the left hip, decreased range of motion in the lumbar spine, atrophy of the left calf and buttock, severe tightness in the hamstrings, antalgic gait, and arthritis. Indeed, Dr. Blair recognized the sources of Plaintiff's pain in his Independent Peer Review report prepared at LINA's request:

> [T]he claimant is functionally limited from 06/10/2012 to present. The claimant had sustained an injury to the left hip previously which was complicated by a fall in January 2012. The claimant underwent a left revision total hip arthroplastly and repair of a femur fracture that was discovered intraoperatively. During the claimant's postoperative recovery and rehabilitation, she reported difficulty due to increased pain to the left lower extremity and low back. Results from an MRI of the lumbar spine done in 11/2012 revealed degenerative changes with a prior T12-L1 compression fracture with loss of vertebral height at L1. The claimant is noted to have spondylosis and facet arthropathy of the lumbar spine with limited range of motion, as well as chronic left hip pain with limited range of motion due to the pain. Weakness was noted to the left lower extremity with examination findings in 09/2013. Hip flexion 5/2+, hip abduction 4/2-. Quadriceps 5/jerking, able to extend only 90% of the way. Tibialis anterior, 5/5/, peroneal 5/jerking about 4- and EHL 5/5. The claimant has continually reported pain with weakness to the left lower extremity following the 06/2012 total left hip arthroplasty revision and repair of femur fracture. X-rays revealed the hip and hardware are aligned. However, due to the nature of the injury and surgery, the claimant continues to complain of pain with weakness to the left lower extremity. The claimant has developed atrophy to the muscles to the left lower extremity since her 01/2012 injury.

(Dkt. # 10-2, Pg ID 320).

Based on the aforementioned medical evidence, and after conducting objective testing during physical examinations on September 6 and 13, 2013, Dr. Crotty concluded that Plaintiff's pain is likely to interfere to a moderate degree with her ability to maintain sustained concentration, attention, and performance in a work setting — in addition to finding that Plaintiff has several physical limitations. *See id.* at Pg ID 351, 358, 363. Likewise, Dr. Fried, who has been Plaintiff's primary care physician for many years, opined

that Plaintiff's severe pain is likely to interfere to a moderate degree with her ability to maintain sustained concentration, attention, and performance in a work setting — in addition to finding that Plaintiff has several physical limitations.  *Id.* at Pg ID 376-79.

Dr. Fried noted that he reviewed the 2012 MRI, and he also conducted a physical examination of Plaintiff on June 25, 2013, which revealed decreased range of motion in the left hip.  *Id.* at Pg ID 376, 381. Dr. Fried opined that Plaintiff's restrictions would likely prevent her from working in her usual occupation at that time. *Id.* at Pg ID 382.

Subsequently, the SSA also determined that Plaintiff's pain limits her ability to concentrate at work, finding that the opinions of Dr. Crotty and Dr. Fried are well supported by objective evidence:

> Considering the evidence as a whole including the left hip replacement surgeries and the consistent findings of antalgic gait and reduced strength in the left lower extremity on physical examinations along with the MRI findings of lumbar spondylosis, the undersigned finds that the claimant is limited to a reduced range of sedentary work with the specific additional restrictions identified above. Notably, as a result of her persistent pain that has not responded well despite revision surgery, rehabilitative therapy, acupuncture, myofascial release therapy, and medications, she would be off task for 20% of the work shift.

*Id.* at Pg ID 335.

Consistent with the findings of Dr. Crotty, Dr. Fried, and the SSA, Dr. Faynzilberg found that Plaintiff has a very complex chronic pain syndrome after reviewing Plaintiff's history and conducting objective testing during his physical examinations on July 10, 2014, August 20, 2014, and December 5, 2014. In his capacity as a pain medicine expert, he opined that the myofascial pain in Plaintiff's case is "very significant."

Reviewing LINA's decision to deny benefits to Plaintiff under the *de novo* standard, based on the administrative record, the Court finds that LINA's decision was incorrect and

that Plaintiff submitted satisfactory proof of Disability as required by the Policy. After conducting file reviews at LINA's request, two physicians, a nurse, and a Vocational Specialist all concluded that the medical records did not support restrictions and limitations that would preclude Plaintiff from the demands of her own occupation. However, nothing in the record indicates that these reviewers considered the cognitive demands of Plaintiff's own occupation, or the degree to which Plaintiff's pain interferes with her ability to concentrate and meet the cognitive demands of her own occupation. *See Rabuck v. Hartford Life & Acc. Ins. Co.*, 522 F. Supp. 2d 844, 876 (W.D. Mich. 2007) (finding that physician file reviewer's utter failure to assess the plaintiff's nonexertional limitations rendered his opinion incredible). As discussed above, the Program Manager job requires highly functioning cognitive abilities. Notably, LINA never addressed Plaintiff's treating physicians' opinions that Plaintiff's severe pain is likely to interfere with her ability to maintain sustained concentration, attention, and performance in a work setting. Nor did LINA address the SSA's determination regarding Plaintiff's pain. Pointing to existing objective data in the record, the SSA agreed with Plaintiff's treating physicians and determined that Plaintiff was totally disabled, finding that she would be off task for 20% of the work shift due to chronic pain that has not responded well to a variety of interventions. While the SSA decision is not binding on LINA, it is "far from meaningless." *See Calvert*, 409 F.3d at 294 (noting that, at minimum, a favorable SSA determination provides support for the conclusion that an administrative agency charged with examining the plaintiff's medical records found objective support for the opinions of the plaintiff's treating physician). While LINA did not have to specifically refute the SSA's reasoning, it is notable

that Dr. Blair did not discuss at all the degree to which Plaintiff's pain would interfere with her ability to concentrate and meet the cognitive demands of her own occupation. The Court also notes that while Dr. Blair attempted to contact Dr. Weir, Dr. Mandel, and Dr. Nunez, he did not attempt to contact Plaintiff or Dr. Crotty, Dr. Fried, or Dr. Faynzilberg, the treating physicians that had been more recently treating Plaintiff. *See* Dkt. # 10-2, Pg ID 319-20. Further, while Dr. Blair's report contains brief mention of some of the medications that Plaintiff has taken, it lacks any substantive discussion of the medications' actual or potential impact on Plaintiff's ability to perform her own occupation. *See id.* at Pg ID 316-21.[1]

Plaintiff's argument that she cannot perform her own skilled occupation of Program Manager because of her pain and combined medical impairments is persuasive. Dr. Fried, Dr. Crotty, and Dr. Faynzilberg all supported the underlying diagnosis of chronic pain. Dr. Crotty and Dr. Fried both opined that Plaintiff's pain would moderately interfere with her ability to concentrate and perform her own occupation. In addition, Dr. Fried opined that Plaintiff had a reasonable need to lie down during the day for relief from pain, that her restrictions would likely prevent her from working in her usual occupation, and that her physical impairments and treatment would cause her to be absent from work four times a

---

[1]LINA makes much of the fact that Dr. Weir, the orthopedic surgeon who performed Plaintiff's revision surgery, cleared Plaintiff to return to work in December 2012 (later postponed to January 2013), but there is no indication that Dr. Weir continued to treat Plaintiff after she sufficiently recovered from immediate impact of the surgery. Rather, other doctors took over her care and rehabilitation. There is also some indication in the record that Plaintiff was unable to secure another appointment with Dr. Weir as planned due to his limited availability, and that Plaintiff lost her health insurance sometime in 2012 and had limited access to care. *See* Dkt. # 10-2, Pg ID 334, 380.

month or more. While the opinions of Plaintiff's treating physicians are not afforded a presumption of correctness, the Court notes that these doctors physically examined Plaintiff a number of times and were in a better position than LINA's file reviewers to observe and evaluate Plaintiff's subjective levels of pain caused by her underlying conditions. Furthermore, while the opinions of Plaintiff's treating physicians do not perfectly track each other, the Court finds that they support each other and are substantially in agreement. Looking at the administrative record as whole under the *de novo* standard, the Court concludes that the opinions of Plaintiff's treating physicians discussed above are well supported. The Court also finds the SSA's determination that Plaintiff would be off task 20% of her work shift and is unable to perform any past relevant work to be persuasive, given that Plaintiff's pain has been consistently documented throughout the years, and given that the physical impairments that form the source of Plaintiff's pain have been objectively identified. LINA has not shown how someone with Plaintiff's chronic pain syndrome could be expected to function on a daily basis at the level of concentration and cognitive functioning required of a Program Manager. The Court notes that LINA reserved the right to physically examine Plaintiff yet chose not to exercise that right.

**B. Plaintiff's Long Term Disability During the "Any Occupation" Period**

Plaintiff also seeks judgment in her favor as to benefits beyond December 24, 2014 during the "any occupation" period. The Court declines this request because there has been no administrative determination as to whether Plaintiff is eligible for benefits during the "any occupation" period. Defendant correctly notes that LINA denied Plaintiff's LTD claim at inception and only ever analyzed it under the "own occupation" standard, and the administrative record does not contain any information regarding Plaintiff's ability to

perform the material duties of any occupation and earn 60% or more of her Indexed Earnings. Accordingly, the Court will remand this matter for LINA to make that initial determination. *See*, *e.g., Pierzynski v. Liberty Life Assur. Co. of Boston*, No. 10-14369, 2012 WL 3248238, at *7 (E.D. Mich. Aug. 8, 2012); *Counsell v. Liberty Life Assur. Co. of Boston*, No. 08-14236, 2010 WL 1286695, at *6-7 (E.D. Mich. Mar. 31, 2010).

For this reason, the Court will also deny Plaintiff's request for a declaratory judgment regarding future benefits. Additionally, Plaintiff continues to be subject to the Policy requirement of providing continuous and satisfactory proof of Disability.

### C. Accounting

Lastly, in her motion, Plaintiff seeks an accounting by Defendant. Defendant correctly notes that Plaintiff did not seek an accounting in her Complaint. The Court finds that this type of relief is inappropriate in this straightforward claim for LTD benefits under ERISA Section 502(a)(1)(b). *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372-73 (6th Cir. 2015), *cert. denied,* 136 S. Ct. 480 (2015) (explaining that the availability of equitable relief under ERISA Section 502(2)(3) is contingent on a showing that the claimant could not avail herself of an adequate remedy pursuant to Section 502(a)(1)(B)).

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion to the extent that she seeks LTD benefits for the "own occupation" period. LINA is ordered to award Plaintiff retroactive benefits payable from December 24, 2012 to December 24, 2014, together with interest, costs, and reasonable attorney's fees. The Court DENIES IN PART Plaintiff's motion to the extent that she seeks LTD benefits for the

"any occupation" period, a declaratory judgment regarding future benefits, and an accounting by Defendant. Defendant's motion is DENIED IN PART and GRANTED IN PART as discussed above. This matter is REMANDED to the insurer for an administrative determination of eligibility for benefits during the "any occupation" period.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 12, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 12, 2018, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager